FILED

98 SEP 30 AM 8: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

SEP 30 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| GOLDA WEBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case Number CV 97-TMP-677-NE |
| | ) |
| ZURICH INSURANCE COMPANY, | ) |
| | ) |
| Defendant/Garnishee. | ) |

### MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed by defendant/garnishee Zurich Insurance Company ("Zurich") on February 2, 1998. The parties have briefed the motion, and oral arguments were heard on May 4, 1998.[1] Because the court concludes that there are no genuine issues of fact and that Zurich is entitled to judgment as a matter of law, the motion will be granted.

---

[1] At the summary judgment hearing on May 4, 1998, all counsel orally stipulated on the record, consenting to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). General Trading, Inc. v. Yale Materials Handling Corp., 119 F.3d 1485 (11th Cir. 1997)(although consent must be explicit, it need not be in writing).



Background

This action arose from a default judgment taken by plaintiff Golda Webb against a Decatur shopping center known as the River Oaks Center, where she experienced a fall. Relying on Alabama Code § 27-23-2,[2] Webb sought to garnish River Oaks's liability carrier, Zurich, for collection of her judgment. Zurich then removed that garnishment portion of the state action to this court, which found that it was properly removed as a "separate and independent" action under Butler v. Polk, 592 F.2d 1293 (5th Cir. 1979).[3]

On October 14, 1997, plaintiff was granted leave to amend her complaint, which she filed that same day. The amended complaint

---

[2]   That section states in relevant part:

Upon the recovery of a final judgment against any person, firm or corporation by any person,..., for loss or damage on account of bodily injury,..., if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.

[3]   See Court's Order of April 29, 1997, denying motion to remand.

2

sets forth four causes of action against Zurich: (1) an action to reach and apply insurance proceeds under § 27-23-2; (2) an action for a declaration that Zurich is due to pay the default judgment against its insured; (3) an action for breach of contract, contending that, by virtue of § 27-23-2, the contract of insurance ran between Zurich as insured and Webb as judgment creditor, and that Zurich has breached the contract by failing to pay proceeds to Webb; and (4) an action for bad-faith refusal to pay the insurance proceeds.  The bad-faith action in Count Four of the amended complaint was later dismissed by United States District Judge Lynwood Smith in an order dated January 30, 1998.  Zurich then filed its present motion for summary judgment as to the remaining three claims of the complaint.

Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking

3

summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Celotex</u>, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." <u>Id</u>. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. <u>Celotex</u>, 477 U.S. at 324.  "[T]he plain language

4

of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is

5

some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249 (citations omitted); <u>accord</u> <u>Spence v. Zimmerman</u>, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. <u>Anderson</u>, 477 U.S. at 254; <u>Cottle v. Storer Communication, Inc.</u>, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. <u>Anderson</u>, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Undisputed Facts

Applying these standards, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the plaintiff. Plaintiff Golda Webb fell and injured her leg at the River Oaks Center shopping mall on January 21, 1995. At the time, River Oaks was operated by River Oaks Center, Inc., which was itself an ultimate subsidiary of a Canadian company, Bramalea, Inc.[4] Representatives of Rivers Oaks Center had immediate notice of plaintiff's fall and made a loss-prevention report concerning it. Within a few days, plaintiff's attorney notified River Oaks that a claim was being made for her injuries and that it should notify its liability insurance carrier. Liability insurance coverage was supplied by defendant Zurich Insurance Company under a contract with the parent company, Bramalea, Inc. Bramalea became aware of the claim and hired an investigator to investigate the claim, ultimately resulting in the taking of plaintiff's statement in April 1995.

---

[4] The hierarchy of ownership began with Bramalea, Inc. It owned in turn a company called Bramalea U.S. Properties Group, which itself then owned Bramalea Urban Properties, Inc. River Oaks Center, Inc. was wholly-owned by Bramalea Urban Properties, Inc.

On August 16, 1995, plaintiff's attorney wrote a letter to the investigating agency, Charles Hardwick Company, offering to settle the claim for $75,000. That letter was then relayed to the manager of the River Oaks Center (Cindy Sandoval) and ultimately to Zurich's representative, Peter Lowe.[5] In a letter dated September 6, 1995, Lowe responded to plaintiff's counsel's settlement proposal by pointing out that the liability policy had a $25,000 deductible and that all future communication on the claim should be addressed to him directly. The letter advised that Bramalea was "not currently settling claims" and that it was "not liquid."

During this time, Bramalea and its subsidiaries were undergoing financial problems that resulted in several Bramalea entities declaring bankruptcy. The accounting firm of Ernst & Young had been appointed as a receiver for the parent company, Bramalea, Inc. In light of these problems, Lowe had instructed each Bramalea subsidiary, as well as Bramalea's receiver, to notify him of any claims or lawsuits,[6] although he did not contact any one

---

[5] Lowe actually was employed by IBNI Risk Management, a company used by Zurich to process its claims.

[6] Plaintiff characterizes this as a new claims procedure. It appears that the previous procedure was for all Bramalea entities in the United States to report claims or lawsuits to Bramalea U.S. Properties Group, which would then make contact with IBNI as Zurich's claims representative. Under the new

at River Oaks Center to relay that instruction. Nevertheless, officials at River Oaks knew to report claims and lawsuits to Zurich or Lowe, and, in fact, had done so.

On September 15, 1995, apparently after receiving Lowe's letter, plaintiff's counsel filed suit against several defendants, including River Oaks Center. Apparently service of process was obtained on River Oaks, because, on October 22, 1996, more than a year after suit was filed, plaintiff obtained a default judgment against it in the amount of $400,000. Officials at Bramalea made the decision not to defend the lawsuit or to notify Zurich of its filing because River Oaks had no assets. Not having heard anything further following his September 6, 1995, letter, Lowe closed his file on July 15, 1996, with the note "No Action. Close." handwritten on the file copy of the letter.

On December 6, 1996, plaintiff's counsel mailed a letter to Lowe, forwarding a copy of the default judgment. Upon receiving the letter, Lowe telephoned Decatur attorney Nick Roth, who represented Bramalea. Roth was not retained by or paid by Zurich to defend lawsuits against Bramalea entities. Rather, Bramalea itself retained Roth to defend suits against it. The purpose of

---

procedure, each separate Bramalea entity would report directly to IBNI without going through Bramalea U.S. Properties Group.

9

the conversation was to determine whether Roth was aware of anything in Alabama law that would undermine the position that Zurich owed no obligation to pay the Webb judgment due to Bramalea's failure to notify Zurich of the suit. Until that conversation on December 13, 1996, Roth had never mentioned to Zurich or Lowe anything about the Webb lawsuit.

Paragraph 7 on page nine of the insurance policy states:

NOTICE OF CLAIM OR SUIT

If claim is made against the Named Insured, the Named Insured shall **immediately forward to the insurer or adjuster** every demand, notice, summons, or other process upon receipt by the Named Insured's Risk Management Group, Toronto, Canada.

Additionally, endorsement 6 at page 25 provides in part:

CLAIMS PROCEDURE

Notwithstanding the provisions of Insuring Agreement No. 2, Defense, Settlement, Supplementary Payment, Bramalea, through its adjusters, Adamson's Limited, will manage in all respects all claims or potential claims for which coverage is provided under the policy. Bramalea will report to the Insurer all claims or potential claims as they are made and come to the attention of Bramalea or Adamson's Limited where the claim is apparently $25,000 or more. Bramalea will provide the Insurer reports on a quarterly basis for claims where the claim or potential claim is apparently $25,000 or more.

Finally, paragraph 10 at page 10 states that no action shall against the insurer "unless, as a condition precedent thereto, the

Named Insured shall have fully complied with all terms of this policy,..."

## Discussion

All of plaintiff's attempts to obtain payment of her default judgment against River Oaks rest on the same legal foundation, that Zurich has a contractual obligation to defend and indemnify its insured, including River Oaks. This contractual obligation, she argues, entitled her as a judgment creditor of River Oaks to enforce the terms of the insurance contract. While true, it means she also is subject to all defenses Zurich has against its insured, including the defense that the insured breached the contract by failing to notify Zurich of the filing of the suit. There is no factual dispute that, although Zurich was notified of the *pre-suit* claim made by plaintiff, it was never notified of the filing of the suit or given an opportunity to defend it. It is also undisputed that this was due entirely to the decision made by the insured, Bramalea, to forego giving notice or even defending the suit itself. Because paragraph 7 of the policy required such notice as a precondition to the insured's obligation to defend and indemnify, Bramalea breached the insurance contract and now has no right to insist on coverage under it. For the same reason, plaintiff cannot

demand the payment of insurance proceeds that the insured itself cannot demand.

This case is not materially different from <u>Watts v. Preferred Risk Mutual Insurance Company</u>, 423 So.2d 171 (Ala. 1982), where the Alabama Supreme Court held:

> The failure of the insured to comply within a reasonable time with a provision in an automobile liability policy requiring the forwarding of suit papers "release[s] the insurer from the obligations imposed by the contract, although no prejudice may have resulted." Standifer v. Aetna Casualty and Surety Co., 319 F.Supp. 1385 (N.D. Ala. 1970); American Fire and Casualty Co. v. Tankersley, 270 Ala. 126, 116 So.2d 579 (1959).

<u>Id.</u> at 173. The court went to the explain that the purpose of such provisions is to afford the insurer the opportunity to control the litigation on which its contractual liability hinges. An insured who deprives the insurer of that right under the contract is not entitled to the benefits of the contract. In this case, Bramalea made the deliberate choice not to forward suit papers on Lowe or Zurich, or even to notify them of the filing of the suit. By doing so, Bramalea dis-entitled itself from seeking the benefits of the policy. Because Zurich owes no contractual obligation to pay the judgment against Bramalea's entity, § 27-23-2 simply does not apply here. There are no insurance proceeds owed by Zurich to Bramalea

which plaintiff may seek in satisfaction of her judgment. Likewise, Zurich has not "breached" a contract with plaintiff by refusing to pay the judgment: Zurich owes no obligation to her to pay it.

Finally, plaintiff seeks to shift the blame for lack of notice of the suit to Zurich by arguing that its claim representative, Peter Lowe, failed to notify River Oaks of *his* desire that all Bramalea entities notify him of claims and suits. But even if River Oaks officials were unaware that they could forward the suit papers directly to Lowe, they followed the normal claims process by notifying Bramalea U.S. Properties Group in Denver of the filing of the suit. It was there that *Bramalea*, the named insured, knowingly decided not to notify Zurich of the suit. It was Bramalea's decision, not Lowe's failure to contact River Oaks, that prevented Zurich from being notified of the suit.

It is also clear that plaintiff's counsel was aware of Lowe's handling of the pre-suit claim; after all, plaintiff's counsel had corresponded with Lowe. To the extent there are any equity arguments to be made (and the court believes there are none), they fall on Zurich's side. Plaintiff could have notified Lowe of the

filing of the suit simply by mailing him a courtesy copy of it,[7] but she did not. If this case turns on the assessment of who is more at fault, the scale tips in favor of Zurich and against plaintiff.

## Conclusion

Zurich was entitled under the policy to notice of the suit in order for it to exercise the opportunity to defend its insured. The insured breached its contractual duty of notification, relieving Zurich of its contract obligations to the insured. Because Zurich owes nothing to Bramalea or River Oaks under the insurance policy, Webb has no claim against the insurer either for breach of contract or under § 27-23-2. By separate order, Zurich's motion for summary judgment will be granted and plaintiff's claims dismissed with prejudice.

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

---

[7] The court expresses no opinion as to whether this would have preserved *Bramalea's* right to demand coverage under the terms of the policy. This is to observe simply that plaintiff knew who Zurich's claim representative was, yet chose not to inform him of the filing of the suit until *after* the default judgment was entered.

14

DONE this the 29th day of September, 1998.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE